**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Karl Gregory Keever,

Plaintiff,

v.

Deborah Dykema, Linda Monson, Kip Monson, and Shannon Morris,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1855 ADM/AJB

---

David L. Lillehaug, Esq., Lillehaug Law Office, Minneapolis, Minnesota, on behalf of the Plaintiff.

Steven W. Wilson, Esq., Briggs & Morgan, P.A., Minneapolis, Minnesota, on behalf of the Defendants.

---

## I. INTRODUCTION

This matter came before the undersigned United States District Judge on February 6, 2002, pursuant to the Motion to Dismiss [Doc. No. 4] of Defendants Deborah Dykema, Linda Monson, Kip Monson, and Shannon Morris (collectively "Defendants"). As grounds for their Motion, Defendants argue that this Court should dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or alternatively, dismiss based upon the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). For the reasons set forth below, the Motion is granted.

## II. BACKGROUND

Plaintiff Karl Gregory Keever ("Keever") alleges entitlement to fees in his roles as a Special Administrator to the Estate of Raymond Dykema (the "Estate"), and as informal business

FEB 2 5 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 2 5 2002
DEPUTY CLERK

advisor regarding the management of certain assets of the Estate. On September 24, 1990, Raymond Dykema, a Minnesota real estate developer and investor, executed a Will devising one-quarter of his estate to each of his three children, Deborah Dykema, Linda Monson, and Diane Dykema, and the remaining quarter to his grandchildren Kip Monson and Shannon Morris. *In re Dykema*, No. C7-00-663, 2000 WL 1672615, at *1 (Minn. Ct. App. Nov. 7, 2000) (*Dykema II*). Diane Dykema was married to Keever since 1983.[1]

As provided by a January 7, 1994, prenuptial agreement, Raymond Dykema executed a Codicil to his Will on March 11, 1994, providing that in the event of his death, his second wife, Patricia Davis, would receive $1,000,000 in cash, the title to their condominium, certain personal property, and $10,000 per month for living expenses until she received $500,000 of the $1,000,000 cash bequest. *Id.* On March 24, 1994, Raymond Dykema and Patricia Davis were married in Hawaii. *Id.*

Raymond Dykema died unexpectedly on July 5, 1994, leaving an estate of approximately $27,000,000. *Id.* Larry Neilson, an attorney nominated in the Will, filed a Petition for Formal Probate of Will and Codicil and for Formal Appointment of Executor with the Probate/Mental Health Division of the Hennepin County District Court in a matter captioned *In re Estate of Raymond Dykema*, No. P4-94-1329, thus commencing the probate action. The residual beneficiaries then obtained information that led them to suspect that Patricia Davis had fraudulently obtained Raymond Dykema's consent to marry. *Dykema II*, 2000 WL 1672615, at *1.

---

[1] In April, 1999, Diane Dykema filed for divorce from Keever. Wilson Aff. Ex. 12, ¶ 2.

The Hennepin County District Court appointed Keever as Special Administrator of the Estate by an Order of June 12, 1995, for the limited purpose of resolving Davis' right to receive assets from the estate. Keever is a lawyer specializing in corporate and tax matters at Coudert Brothers in Los Angeles, California. Keever then filed a petition challenging Patricia Davis' rights as surviving spouse under the Codicil. *Id.* Finding the marriage valid, the Hennepin County District Court granted Patricia Davis' motion for summary judgment on November 28, 1995. *Id.* The Minnesota Court of Appeals affirmed the district court's summary judgment in favor of Patricia Davis, holding that the Special Administrator had no basis for attacking the validity of the marriage. *In re Dykema*, No. C5-96-669, 1996 WL 589104, at *2 (Minn. Ct. App. Oct. 15, 1996) (*Dykema I*).

Keever, as Special Administrator, then commenced litigation seeking to impose a constructive trust on any assets of the Estate received by Patricia Davis. *Dykema II*, 2000 WL 1672615, at *1. Finding no grounds to impose a constructive trust, the Hennepin County District Court granted Patricia Davis' motion to dismiss. *Id.* Minnesota Court of Appeals affirmed. *Id.* On or about December 15, 2000, all litigation involving Patricia Davis was settled on behalf of the Estate by stipulation of the parties.

In an effort to complete a final accounting of the Estate, Keever was asked to provide a bill for his services as Special Administrator. In response, on October 5, 2000, Keever submitted a one-paragraph bill for $800,000, stating:

> For services rendered in connection with Estate of Raymond Dykema, including services as Special Administrator, litigation in connection therewith concerning surviving spouse's various rights and claims under the Will and otherwise, issues

> with respect to the Personal Representatives and their administration of the Estate as related to the surviving spouse, and all related matters for the period from July 19, 1994 to October 2000.

Wilson Aff. Ex. 13.

In an exhibit to his declaration in his own California divorce case, Keever reported an account receivable of $800,000 for "[s]ervices rendered by [Keever] in connection with R. Dykema Estate (at petitioner's and other beneficiaries request) . . . ." Wilson Aff. Ex. 12, Ex. B, at 6. Calling it "unreasonable" and "outrageous," Diane Dykema has denied any participation with Keever in submitting the $800,000 bill. Wilson Aff. Ex. 14 (letter from Diane Dykema of Jan. 4, 2001). Nevertheless, as Keever's wife, Diane Dykema could benefit from any recovery by Keever to the extent such recovery becomes community property in the California divorce.

On March 6, 2001, Deborah Dykema and Kip Monson filed a Petition to Confirm Discharge as Special Administrator and Determination of Special Administrator's Compensation with the Hennepin County District Court. Wilson Aff. Ex. 15. The Petition alleges that "Keever was not retained or authorized by the Estate or by any interested party at any time to perform any services for the Estate except as Special Administrator." *Id.* ¶ 6. The Petition was served on all interested parties, including all of the beneficiary Defendants here. *See id.* Ex. A.

On April 26, 2001, Keever filed his Objection and Cross-Petition. Wilson Aff. Ex. 16. Therein, Keever alleged that "he is entitled to payment from the Estate for his services as Special Administrator in the amount of $325,000 . . . [and additionally,] that he has a separate cause of action against the beneficiaries of the Estate, individually, for services rendered on their behalf, which action is not affected by the outcome of this proceeding." *Id.* ¶¶ 2-3.

On May 15, 2001, Deborah Dykema and Kip Monson filed a Reply to Keever's Cross-

Petition and a Counter-Petition. Wilson Aff. Ex. 17. The Counter-Petition alleges that the state district court, through its probate division, has subject matter jurisdiction to determine all matters regarding Keever's compensation in relation to the Estate, pursuant to Minn. Stat. § 524.1-302. *Id.* Specifically, the Counter-Petition requests a judgment from the state court:

> Declaring that all claims for compensation of [Keever] in relation to the Estate, in whatever capacity and of whatever nature, are within the jurisdiction of this Court and are joined for resolution in this proceeding . . .
>
> Declaring that [Keever] has no separate cause of action against the beneficiaries of the Estate, individually, for services rendered on their behalf . . .
>
> Awarding judgment to the beneficiaries, individually, on [Keever's] claims against them, and that [Keever] take nothing on his claim for compensation against the beneficiaries, individually . . .
>
> Awarding judgment to the Estate that [Keever] take nothing against the Estate on his claim for compensation outside of his role as Special Administrator to the Estate.

*Id.* at 4, ¶¶ 1-4.

Keever did not remove the state court action to federal court, and the time for him to do so has expired. *See* 28 U.S.C. § 1446(b) (30 days to remove). On October 10, 2001, Keever commenced this action. He brings claims of quasi-contract and unjust enrichment, alleging that he provided valuable services in the sale, exchange, investment, and management of the assets of the Estate. *See* Compl. ¶¶ 13-19, 24, 34. All beneficiaries of the Estate, except Diane Dykema, are named as Defendants.

## III. DISCUSSION

### A. Lack of Subject Matter Jurisdiction

Federal courts lack jurisdiction over probate matters. *See In re Brokerick's Will,* 88 U.S. 503, 517 (1874); *Sutton v. English*, 246 U.S. 199, 205 (1918). Under the "probate exception" to

federal diversity jurisdiction, a federal court may not adjudicate a diversity case that is "simply an extension of state probate proceedings." *Krueger v. Farmers & Merchs. Bank*, 721 F.2d 640, 641 (8th Cir. 1983). However, federal courts have jurisdiction to hear suits "in favor of creditors, legatees, and heirs" and other claimants against a decedent's estate "to establish their claims," provided that the federal court does not interfere with the probate proceedings or assume general jurisdiction over the probate or control of the property in custody of the state court. *Markham v. Allen*, 326 U.S. 490, 494 (1946). When it is unclear whether a matter is properly classified as probate or *in personam*, courts "endeavor to distinguish between direct interferences with or control of the res and adjudication of the rights of individuals who have an interest in the res." *Bassler v. Arrowood,* 500 F.2d 138, 142 (8th Cir. 1974).

Here, the state court proceeding concerning the Estate is still open and active, increasing the likelihood of interference.[2] Keever submitted a bill for services rendered in connection with the Estate. *See* Wilson Aff. Ex. 13. His claims against Defendants in this matter are related to this bill.[3] Because the Estate may be exposed to claims by Defendants to satisfy any judgment in

---

[2] *Cf. Breaux v. Dilsaver*, 254 F.3d 533, 536-37(5th Cir. 2001) (finding no federal interference in part because the estate was closed), *Hamilton v. Nielsen*, 678 F.2d 709, 710 (7th Cir. 1982) (finding that federal jurisdiction was proper because the federal proceeding would not impede the virtually completed probate matter), *Law v. Law*, 922 F.Supp. 1106, 1108-09 (E.D. Va. 1996) (holding that federal jurisdiction was proper despite the probate exception because the state court had completed its administration of the estate).

[3] It is noteworthy that, in his one-paragraph bill for $800,000, Keever did not delineate between services as Special Administrator and business services rendered in managing Estate assests for the benefit of Defendants, individually. In his divorce proceeding, he reported an account receivable of $800,000 for services rendered in connection with the Estate. Keever did not partition his bill until after the issues were joined and fully developed in the state court Petition, Cross-Petition, and Counter-Petition.

favor of Keever here, this action may extend to the res of the Estate, thus interfering with the jurisdiction of the state court's jurisdiction over the res. Intertwined are the issues of the value and extent of Keever's services as Special Administrator, as opposed to informal business advisor, for the assets of the Estate. The issues pled by Keever here are joined in the state court proceeding. This action cannot be resolved separately without interfering with the state court proceeding.

Moreover, this action is causing actual interference with the proceeding in state probate court. Referencing his federal suit, Keever has refused to answer interrogatories addressing the aforementioned issues in the state probate court. *See* Wilson Aff. Exs. 20, 24-30. Defendants contend that Keever is using the existence of this federal suit as a shield to avoid discovery in the state court case. *See* Def. Reply Mem., at 3. Due to interference with the final resolution of the state court probate of the Estate, federal jurisdiction is lacking.

**B. Abstention**

Even if subject matter jurisdiction existed here, the exceptional circumstances of this case urge this Court to abstain from exercising jurisdiction. In *Colorado River*, the Supreme Court noted that federal courts may dismiss cases based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 818 (quoting *Kerotest Mfg. Co. v. C-O -Two Fire Equipment Co.,* 342 U.S. 180 (1952)). The Supreme Court provided a list of factors that suggest whether abstention is appropriate. *Id.* at 818-21. Under *Colorado River*, only "exceptional circumstances" warrant dismissal of a federal action in favor of a concurrent state court proceeding. *Id.* at 813.

The threshold question of the *Colorado River* analysis is whether the state and federal

proceedings are "parallel." *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). Parallel suits need not be identical. *Id.* Rather, parallelism requires that the two actions involve substantially the same parties and issues. *Id.* Two of the parties named in the federal proceeding, both residuary beneficiaries to the Estate, are not parties to the state court action. The remaining parties, also residuary beneficiaries, are named in the state court proceeding. Assets of the Estate will likely be used to compensate Keever for his services, even if the individual beneficiaries receive the funds before disbursing them to Keever. Therefore, the parties in the two actions are sufficiently similar to be considered parallel. The issues involved in the two actions are parallel as well. Keever's claims for informal business services allegedly were undertaken to help manage the resources of the Estate. Keever's bill for services included only one total for both his roles as informal business advisor and Special Administrator. Questions regarding the extent and value of Keever's activities in these two capacities are intertwined, and involve a common nucleus of operative fact. Because both types of services, performed with the common goal of preserving the assets of the Estate, were originally submitted on one bill, the claims involve substantial similarities to trigger the *Colorado River* analysis.

The first factor involves determining whether the state court has jurisdiction over the res. *Colorado River*, 800 U.S. at 818. The state probate court clearly has jurisdiction over the Estate in this case. As previously discussed, Keever's claims are related to management of the assets of the Estate. Therefore, this factor favors dismissal of the federal action.

The second factor, the convenience of the federal forum, is insignificant because both the federal and state proceedings are being heard in Minneapolis, Minnesota. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 19 (1983). Although this consideration does not support dismissal, the abstention inquiry does not end. A court deciding whether to dismiss a federal court proceeding in favor of one in a state court does not rely on a "mechanical checklist,

but on a careful balancing of the important factors as they apply in a given case." *Id.* at 16. The convenience factor does not counterbalance the considerations favoring abstention.

The third factor counsels against piecemeal litigation. Indeed, it is a "clear federal policy" to avoid piecemeal adjudication. *Id.* Dismissing this case will ensure that the federal court will not duplicate work performed in state court. This consideration is particularly important because federal courts lack experience with probate matters. State courts are accustomed to dealing with the "many varied problems" involved with estates. *Bassler*, 500 F.2d at 142. State court expertise in such matters "should discourage federal court intervention." *Id.*

The fourth consideration is which action has priority. *Moses H. Cone,* 460 U.S. at 21. State court proceedings on these issues began on March 6, 2001. Because Keever filed his complaint in federal court in October, 2001, the state court action has priority. In these types of cases, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* The state action also leads this federal action under this definition of "priority." The parties in the state proceeding have completed the pleadings, are engaged in discovery, and trial is set for June, 2002. The federal action, by contrast, is in a very early pre-trial stage. The priority factor weighs in favor of dismissing this case because it will allow the original litigation in state court to conclude without being usurped by a subsequent federal proceeding.

Regarding the fifth factor, the parties agree that state law governs the case. *See id.* at 19. This consideration also supports dismissing the case, particularly because the relevant state law involves probate matters, an exclusive province of the state court.

The sixth factor, whether the state court action will adequately protect Keever's rights, also favors dismissal. *See id.* at 23. The issues raised by Keever in this suit are joined in the state probate court proceeding. The state court may compensate Keever for his services from the res of the estate, thereby satisfying his interests and obviating the need for this federal litigation.

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction, the exceptional circumstances of this case warrant dismissal. *See Colorado River*, 424 U.S. at 817. The issues regarding Keever's services as Special Administrator, and as informal business advisor, revolve around his activities and involvement with managing assets of the Estate. Questions surrounding his purported dual roles are incapable of coherent separation into two different proceedings. A federal court should not "needlessly interfere with a state's administration of its own affairs." *Bassler*, 500 F.2d at 142. This dismissal does not deny Keever the opportunity to receive compensation for the services he provided. Rather, the decision allows the state court, which is familiar with this litigation in particular and probate matters in general, to decide the issues in this case. Allowing the state court to determine all the issues involved with the case will help conserve judicial resources and ensure a comprehensive and timely conclusion to this longstanding, unpleasant controversy.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Doc. No. 4] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: February 25, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.